FRANK M. COFFEY, EXECUTOR OF THE ESTATE OF

MARY GERTRUDE COFFEY

*vs.*

HAROLD N. GAYTON, HAZEL E. BICKNELL,

THE TRAVELERS INSURANCE COMPANY,

MERCHANTS MUTUAL CASUALTY COMPANY.

(DECIDING THE ABOVE AND TWO OTHER CASES)

Androscoggin. Opinion, February 8, 1939.

142

*Berman & Berman* (Lewiston, Maine), for plaintiffs.
*Fred H. Lancaster,*
*John J. Connor, Jr.,*
*Clifford & Clifford,*
*Frank T. Powers,* for defendants.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

THAXTER, J.    Six actions at law, growing out of an automobile collision, were brought, three against Hazel E. Bicknell, and three against Harold N. Gayton. Two were prosecuted by Frank M. Coffey as executor of the estate of his wife, Mary Gertrude Coffey, to recover for her conscious pain and suffering, two were brought

by Frank M. Coffey to recover for expenses in treating her injuries and for loss of her services, two more by him individually to recover for his own injuries. The plaintiff recovered a judgment in each case and executions were issued in the first two for $10,317.61 against Hazel E. Bicknell, and $10,317.86 against Harold N. Gayton; in the second two for $6158.55 and $6158.15; and in the third two for $2086.52 and $2082.79. Miss Bicknell, the owner of the car involved in the accident, was insured in the Travelers Insurance Company. Gayton, who was driving her car at the time of the accident, was president and manager of the Gayton-Crowley Chevrolet, Inc., which did an automobile sales and garage business. This company had a policy in the Merchants Mutual Casualty Company which insured the corporation, and the plaintiff claims that Gayton was covered personally for his liability growing out of the accident. Gayton, since he was driving the automobile with Miss Bicknell's permission, was covered by her policy but the limits of it were not sufficient to permit payment of the amount to which the plaintiff was entitled on all the judgments. This bill in equity was filed in accordance with the provisions of R. S. 1930, Chap. 60, Secs. 177-180 to reach and apply the insurance money from both policies against the liabilities of the judgment debtors. It deals only with the cases of Frank M. Coffey, Executor, against Miss Bicknell and Mr. Gayton. The bill recites that judgments were recovered in the other two groups of actions and that the amount to which the plaintiff is entitled on all the judgments is in excess of the limits in the policy of the Travelers Insurance Company. The bill prays that both insurance companies may be ordered to pay the amount recovered by Frank M. Coffey, Executor, in accordance with the proportionate liability of each company. Similar bills in equity have been filed to reach and apply the insurance money to the payment of the judgments in the other two groups of cases, and all three causes are reported to this Court under a stipulation that the bill, answers and other pleadings made a part of the record in the case of Frank M. Coffey, as Executor, are typical of the bills, answers and pleadings in the other two.

The defendant, Gayton, on October 20, 1935 was the president and manager of the Gayton-Crowley Chevrolet, Inc., a corporation doing a sales and garage business in Lewiston and having the

agency for Chevrolet automobiles. It sold not only new cars and trucks but used cars of various makes. In connection with his business Gayton had planned to drive to Skowhegan on the morning of Sunday, October 20th, to interview a prospective customer. He stopped at the place of business of the Lewiston Buick Company and talked with a friend, Carl Curtis, who told him that he was going to Norridgewock on business in his car. As Norridgewock and Skowhegan are located near each other, the two men decided to go together in one of Curtis' cars. Gayton drove his car back to his own garage; Curtis picked him up there; and they then proceeded on their way to Skowhegan. In the neighborhood of Greene an automobile driven by the defendant, Miss Bicknell, passed them. Mr. Curtis who recognized her overtook her, asked her where she was going, and invited her to ride with them. Leaving her own car at Jerry's Garage in Monmouth she joined the two men. The three then drove to Norridgewock and to Skowhegan where Gayton interviewed his prospective customer. Late in the afternoon they all started back to Lewiston. It was dark when they arrived at Jerry's Garage in Monmouth where Miss Bicknell's car had been left. According to the testimony of Mr. Curtis, Miss Bicknell said that she hated to drive after dark in the traffic on that road, and it was decided that Gayton would drive her car back to Lewiston and that they would meet at Gayton's garage there. Gayton testifies that he suggested driving her car back because he was in a hurry to get to the office. After he had gone about two miles he had a collision with the automobile driven by Coffey. As a result of that collision the actions at law previously referred to were brought against Miss Bicknell, the owner of the automobile, and against Gayton who was driving. Miss Bicknell's liability was based on the fact that Gayton acted as her agent in driving her car.

There seems to be no question as to the liability of the Travelers Insurance Company under the policy issued by it. It covered Miss Bicknell as owner of the car and Gayton who was driving it with her permission. The problem here is whether the policy of the Merchants Mutual Casualty Company covered the liability of Gayton. If it did we presume the plaintiff will collect the full amount of his judgments instead of a part, and the sum which the Travelers Insurance Company will have to pay will be substantially

reduced because of the apportionment of the loss between the two insurers based on the limits set in their respective policies.

Counsel for the Merchants Mutual Casualty Company objected to amendments to the bills offered by the plaintiff. The Court permitted the amendments. As the cases are reported without reservation on bills, amendments, answers, and other pleadings the objections must be held to have been waived.

The Merchants Mutual Casualty Company on May 26, 1934 had issued a liability policy insuring Gayton-Crowley Chevrolet, Inc. This policy expired May 26, 1935. It contained an endorsement, referred to as Endorsement No. 41, which on the conditions therein set out insured Gayton individually. Prior to the expiration of the policy there were negotiations between the insured and the authorized agent of the insurer for a renewal of it. We are satisfied from the evidence that it was the intention of both parties that a new policy should be issued on the same terms and conditions. June 2, 1935 the new policy was executed to expire May 26, 1936. Through some error it did not contain Endorsement No. 41. The plaintiff's bills as amended set forth these facts and pray that the policy may be reformed or construed as if the endorsement were a part of it. As the evidence shows that the provision in question was omitted through mutual mistake, we shall treat the policy as if the endorsement were a part of it. *Tarbox* v. *Tarbox*, 111 Me., 374, 89 A., 194; *National Traders' Bank* v. *Ocean Insurance Co.*, 62 Me., 519; *Inter-Southern L. Ins. Co.* v. *Holzhauer*, 177 Ark., 927, 9 S. W., 2d, 26; Note 66 A. L. R., 777; Note 76 A. L. R., 1220 *et seq.*

We have therefore two questions before us, first the construction of the terms of the policy assuming Endorsement No. 41 to be a part of it, secondly we must determine whether Mr. Gayton was covered by the terms of the policy as so construed.

The essential part of the coverage clause of the policy reads as follows:

"THIS POLICY INSURES AGAINST SUCH LOSSES (defined in clauses one and two above) when sustained by reason of the conduct of the Automobile Sales Agency, Public Garage, or Automobile Service Station located as specified in said Warranties; including the ownership, maintenance and operation of any style, type or make of automobile, tractor, or trailer,

for any and all purposes in connection with such business including pleasure use."

Endorsement No. 41 which relates to Gayton's coverage must be construed in connection with this. It reads in part as follows:

"In consideration of the additional premium of $ NIL this policy is extended to cover the legal liability as defined therein of H N GAYTON-PRESS while any automobile owned by or in charge of the named garage, other than an automobile owned by the person named below or by member of his family, is being operated by said named person (or by any person when accompanied by him) for the purposes described in the policy and for private pleasure purposes."

It is to be noted that this policy is something more than the ordinary policy covering liability for accidents in the operation of automobiles. This covers liability incurred in the general conduct of the business, included in which is that incurred by the ownership, maintenance and operation of automobiles, etc., for any purpose in connection with the business. We are not here concerned with the provision relating to pleasure use. In so far as Endorsement No. 41 has any application to the present case, it covers the legal liability of Mr. Gayton individually while operating an automobile in charge of the named garage for any purpose in connection with its business.

We can not agree with the contention of counsel for the plaintiff that Gayton was covered by the policy merely because at the time of the accident he may have been exposed to an operating hazard of the business. The policy does not so state. The provision of the policy on this point relates not to coverage but to the method for assessing the amount of the premium. It provides merely that the premiums on the policy shall be based upon the entire remuneration of all employees, and that the salary of officers whose duties expose them to any operating hazard of the business shall be included at a fixed amount of $2000.00 each per person.

The questions in this case to be determined are, first was the Bicknell car at the time of the accident in charge of Gayton-Crowley Chevrolet, Inc., and secondly was it then being operated for any purpose in connection with the business of that company.

Both of these questions must be answered in the negative.

The judgments against Miss Bicknell are based on the assumption that Gayton was acting as her agent at the time of the accident. Counsel for the plaintiff insist that this is not inconsistent with his also being the agent of his company; and they point out that an agent may act for two principals at the same time so as to render them both liable. *Koontz* v. *Messer*, 320 Pa., 487, 181 A., 792; Restatement, Agency (1933), Sec. 226. But this is an exception to the ordinary rule which is that one can not be the servant of two masters at the same time. Restatement, Agency (1933), Sec. 226, *supra*. An excellent discussion of this general problem will be found in *Higgins* v. *The Western Union Telegraph Company*, 156 N. Y., 75, 50 N. E., 500, 66 Am. St. Rep., 541. The question before us is was Gayton at the time of the accident acting as the agent of his company.

The automobile of Miss Bicknell was in no sense in charge of the Gayton-Crowley Chevrolet, Inc., unless the control of it by Gayton was likewise the control of the company of which he was president; and accordingly if he was not in the words of the policy operating it for the purposes described in the policy, namely the business of the company, the automobile was not in its charge.

Reduced to its simplest terms the plaintiff's contention seems to be that because Gayton was on the company's business when he went to Skowhegan, and because he was on his way home at the time of the accident in Miss Bicknell's car, therefore he was using Miss Bicknell's car on the business of his company.

We shall assume for the purposes of this case that in going with Curtis to Skowhegan Gayton was on the business of his company. But we are satisfied that his offer to drive Miss Bicknell's automobile back to Lewiston was made solely as a favor to her. He would have us believe that he did so because he was in a hurry to get home. But the trip during the entire day seems to have been a very leisurely one. When they arrived at Monmouth they were going right home. Gayton's testimony negatives the idea that any stop or diversion was contemplated. He states that the distance was ten or twelve miles. They would have been home in approximately twenty minutes. Nothing which had happened previously that day indicates why time suddenly became so valuable. It is absurd to

suppose that the saving of two or three minutes on that ride was in any sense a factor in his driving Miss Bicknell's car.

February 16, 1936 Gayton gave a statement to a representative of the Merchants Mutual Casualty Company. In it he tells how the accident happened. Nothing is said as to the reason why he drove Miss Bicknell's car. There is merely the assertion that he drove it. Subsequently on March 6th he signed a further statement for the same representative of the same insurance company. This indicates clearly that in the interval all parties had become conscious of the fact that there was an important question as to the insurance covering the liability for the accident. Instead of a simple recital of facts the first paragraph contains in part a conclusion of law,— that he was not driving the car on the business of his company; the balance contains allegations obviously designed to build up that hypothesis. Then after consulting his attorney he added a further paragraph negativing all that he had said in the first. As a piece of evidence for or against either party to this controversy, this statement is utterly worthless.

We prefer to rely on the testimony of the three who drove that day to Skowhegan in Mr. Curtis' car. That testimony indicates clearly that Miss Bicknell, when they arrived near Monmouth where she had left her car, told her two companions that she hated to drive over that particular road after dark; and the only reasonable inference to be drawn from all the evidence is that Mr. Gayton undertook to drive her automobile home for her solely as an accommodation to her and that in so driving it he was not acting as the agent of his company on his company's business.

The cases are remanded to the sitting Justice for decrees dismissing the bills as to the Merchants Mutual Casualty Company but sustaining them as to the other defendants for the purpose of reaching and applying the proceeds of the insurance policy issued by the Travelers Insurance Company to the payment of the judgments recovered by the plaintiff to the extent of the limits set forth in such policy.

*So ordered.*