## Lawrence v. Yusem

*William S. Morrow*, for plaintiffs.

*John A. R. Welsh* and *Charles W. Kugler*, for defendant.

*Markowitz, Liverant, Rauhauser & Kagen*, for additional defendant.

CRYTZER, P. J., April 12, 1958.—On January 4, 1954, L. Murial Lawrence and Kenneth B. Lawrence, wife and husband, while proceeding eastwardly on Route 22 in Perry County collided with an automobile owned and driven by Stanton M. Yusem. The Lawrence automobile was owned and at the time of the collision was being operated by the husband.

A praecipe for a summons in trespass was filed by William S. Morrow, Esq., for the wife and husband plaintiffs on December 12, 1955, and was served on defendant January 9, 1956. John A. R. Welsh, Esq., entered his appearance for defendant August 29, 1956, and on the same day filed a praecipe for a rule on plaintiff to file a complaint within 20 days after service of the rule. September 19, 1956, attorney Morrow accepted service of the rule and on October 8, 1956, he filed the complaint as attorney for both plaintiffs. The same day service of the complaint was accepted by Charles W. Kugler, Esq., local counsel for defendant.

Defendant's counsel filed a petition for severance of the actions of the husband plaintiff and the wife plaintiff and the court issued a rule on the wife to show cause why her action should not be severed. Attorney Morrow accepted service of the petition and rule November 14, 1956. No answer was filed thereto and subsequently the rule was made absolute.

On March 16, 1957, defendant filed a praecipe for a writ to join Kenneth B. Lawrence as an additional defendant in the wife plaintiff's severed action and Yusem's complaint alleging the husband's liability over to defendant should defendant be found liable. Notice of the filing and acceptance thereof were entered by attorney Morrow on April 8, 1957. The complaint was endorsed with notice to plead but no answer was filed thereto.

The cases were listed for trial at October term, 1957, and the court gave due and timely notice of more than two weeks to all counsel of record that the usual pretrial conference would be held October 17. All counsel of record appeared and among other agreements and rulings, the cases were severed, the husband plaintiff was joined as the additional defendant in the action of the wife plaintiff as requested in the rule made ab-

solute; the severed actions were consolidated for the purpose of trial begining October 22.

On October 22, 1957, the husband plaintiff, and additional defendant in the severed action, appeared by counsel Markowitz, Liverant, Rauhauser & Kagen and alleged that on October 18, 1957, for the first time he learned that on October 6, 1954, his insurance carrier, American Farmers Insurance Company, had paid defendant Yusem $5,000 and had taken his release to Kenneth B. Lawrence. Lawrence alleged this release would be a complete defense to him as additional defendant, that he might lose the benefit of his insurance coverage if he failed to present this defense, and requested the right to file an answer and new matter to defendant's complaint against him. Thereupon all counsel agreed to continue the cases.

November 13, 1957, the additional defendant presented his petition for leave to file an answer and on that date the court granted a rule on defendant to show cause why such leave should not be given, rule returnable 30 days after service. Defendant filed an answer to the rule and the matter was subsequently argued.

### Discussion

Paragraphs 1 and 3 of Mr. Lawrence's petition represent that he is the additional defendant in the severed action in which his wife is plaintiff. Thus no question is raised as to the regularity of the proceedings joining him; if any irregularity did exist, he has chosen to waive it by his pleading.

Paragraph 2 of the petition alleges that plaintiff's complaint with notice to plead was filed October 8, 1956, and service thereof accepted the same day by attorney Morrow. This is contrary to fact as Mr. Morrow executed and filed the complaint of both plaintiffs and endorsed the notice thereon to plead. Counsel for defendant accepted service. The petition further al-

leges that copies of plaintiffs' complaint were not forwarded to Kenneth B. Lawrence nor his insurance carrier. This is a most specious argument. Petitioner himself, Kenneth B. Lawrence, joined his wife in executing the complaint and its verification after its preparation by his attorney. His verification states that the facts set forth in the complaint are true upon his personal knowledge and belief. Should defendant be prejudiced because plaintiff failed to order a copy of his own complaint? We think not. If plaintiff failed to submit a copy of his complaint to his insurance carrier, this omission may have some effect on the relations of plaintiff and his insurance carrier (their contract is not available to the court), but the oversight of plaintiff shall not inure to his benefit and thus deprive defendant of his statutory rights.

Perhaps petitioner meant to complain that he failed to give a copy of the writ bringing him in as an additional defendant and the ensuing complaint to his insurance carrier. Such neglect, whether it be studied and intentional or merely an oversight, should not militate to plaintiff's defense at the expense of defendant. No man nor his insurance carrier should gain advantage over another by the negligence of himself, his attorney or his insurance carrier. By rewarding negligence we encourage bad faith.

Paragraphs 4 and 5 of the petition allege that on October 18, 1957, for the first time petitioner, Kenneth B. Lawrence, discovered that his insurance carrier paid Stanton Yusem, defendant, $5,000 in exchange for Yusem's release, which petitioner believes will constitute a complete defense to him as additional defendant in his wife's action.

Paragraph 6 cites Pa. R. C. P. 1033 as authority for his request to file an answer and new matter based on the after discovered release. The said rule applies to a

party seeking to (1) change the form of action, (2) correct the name of the party or (3) *amend* his pleading. This rule is not to be used as a foundation for extending the time allowed for pleading and thus nullify all rules establishing time limits for pleadings. Mr. Lawrence is not amending a pleading, but attempts to assert in a new pleading by answer and counterclaim a matter which should have been pleaded seven months earlier. To allow a party who has been dilatory in every step of the proceedings subsequent to filing the praecipe for a summons to wait until the day set for trial to interject a new pleading, based on the negligence and oversight of himself, his insurance carrier and his counsel, is contrary to both the spirit and the form of our rules. Laches should not be permitted to rust the wheels of justice.

Who is to be hurt by disallowing Lawrence to file this tardy pleading? Not Mrs. Lawrence, she will have even a better chance before a jury if a release disclosing that her husband's insurance carrier paid Yusem $5,000 because of this very accident is not put in evidence. Juries know that insurance companies make "nuisance" settlement, but they do not pay $5,000 for noncritical personal injuries and damages to a 1952 Pontiac automobile unless they are convinced that the negligence of their assured, Mr. Lawrence, caused the accident and defendant, Mr. Yusem, was free from contributory negligence. In fact the jury will not even know the Lawrences carried insurance unless this release is put in evidence by Mr. Lawrence. The jury will hear and determine the actions on the facts unconfused by a release and agreement subsequently made. Should she lose her case, it will be on these facts.

Should the jury award her damages against Mr. Yusem, it will be on the facts. Should she be awarded damages against her husband, she cannot collect from

him nor from his insurance company. So neither of them can be harmed. Should the verdict be against Yusem with her husband "liable over," she should not collect indirectly the amount "liable over" which she cannot collect directly.

If by some unfathomable reasoning the husband should be held liable on a *collectible* verdict, the damages would be payable to his wife. Then either he or his carrier could be hurt. The contest would be between the two parties whose joint and separate negligences were the direct cause of the failure to file the answer. Does it belong here? Or should the "collection litigation," if there is any, fall on Yusem who took every forward step moving the cases to trial?

Who would be hurt if the filing of this tardy pleading was allowed? Mrs. Lawrence would suffer a tactical disadvantage before the jury. Mr. Lawrence in his action would be in an even more difficult position. The jury may give credence to the release and agreement rather than to the facts at the scene of the collision. Certainly their credibility will be tried when Mr. and Mrs. Lawrence offer evidence that Yusem's negligence caused the accident and they were free from contributory negligence, and then Mr. Lawrence offers in his defense evidence that his insurance carrier paid Yusem $5,000 for Yusem's damages in the same accident. What if by the aforesaid unfathomable reasoning the verdict is against Yusem with Mr. Lawrence "liable over" to him? Must Yusem pay over to Mrs. Lawrence and then try to collect from Mr. Lawrence a sum which she could not collect directly and which Yusem could not collect because of the release? We think not, but why should Yusem suffer the expense of such added litigation? Based on the present action, such future litigation is conceivable.

Our two Supreme Court cases of Killian v. Catanese, 375 Pa. 593, 101 A. 2d 379, and Davis v. Miller, 385

Pa. 348, 123 A. 2d 422, were called to the attention of counsel both before and at the time of argument.

The Killian case holds in essence that where A operated an automobile which collided with another automobile operated by B in which C was a passenger, and thereafter A executed a valid release releasing B "from any, and all manner of, actions and causes of action, suits, . . . claims and demands whatsoever in law and equity, especially accident . . .", and thereafter C instituted a suit in trespass against A, and A sought to join B as an additional defendant, that the release barred such joinder and that the court below had properly entered judgment in favor of B.

In the Davis case, it was held that where plaintiff in an action of trespass releases the additional defendant pursuant to the Uniform Contribution Among Tortfeasors Act of July 19, 1951, P. L. 1130, the original defendant is entitled to retain the additional defendant as a party in the case for the purpose of having the additional defendant's liability as a joint tortfeasor determined, even though the original defendant is not entitled to contribution from the additional defendant by reason of his own release.

In the Killian case, as well as in the instant case, no release had been given by plaintiff to the additional defendant. In the Davis case, plaintiff as well as the original defendant released the additional defendant. The Supreme Court in the Davis case, speaking through Mr. Chief Justice Stern, stated as follows, at page 352:

"Therefore, although Miller (the defendant) cannot recover contribution from the additional defendant, he does have an extremely valuable right in retaining her in the case, because, if the jury should find her to be a joint tortfeasor, his liability to plaintiffs would be cut in half. Her continuance in the case is therefore necessary, even though no recovery can be had against

her either by plaintiffs or by defendant, in order to determine the amount of damages that defendant may be obliged to pay plaintiffs in the light of the situation created by their releases of the additional defendant's liability."

According to the pleadings, both Mr. Lawrence and Mr. Yusem are joint tortfeasors. The actual determination of this status is for the jury. In the Davis case the Supreme Court stated the controlling question in the case as distinguished from the Killian case was the giving of a release by plaintiff to the additional defendant. The Uniform Contribution Among Tortfeasors Act is then discussed followed by this statement:

"It is therefore clear that an important factor in the determination of the amount of damages that Miller may be required to pay to plaintiffs is *whether or not Mary Richardson would also have been liable to them had they not released her*—in other words, whether she was a joint tortfeasor with Miller. If such she was, then, under the Act and the terms of the releases which plaintiffs gave her, they can recover from Miller only his pro rata share, in this case half, of the amount to which they otherwise would have been entitled; if, on the other hand, she was not a joint tortfeasor, the releases given her by plaintiffs would not inure to Miller's benefit. Koller v. Pennsylvania Railroad Co., 351 Pa. 60, 40 A. 2d 89." (Italics suppled.)

In the present action plaintiff did not release the additional defendant, her husband. But the laws of the Commonwealth, as ably set forth by the late Judge Keller in Fisher v. Diehl, 156 Pa. Superior Ct. 476, 40 A. 2d 912, provide that a wife may not sue her husband for negligent personal injuries nor may any judgment obtained against him as an additional de-

fendant be enforced by the wife, but is only available to the original defendant by way of contribution.

Even though the husband is a joint tortfeasor he is automatically released from his pro rata share due a wife plaintiff whether the share is one percent or 99 percent, unless he first gets a general release from the other tortfeasor, in which event the wife can recover *all* her damages from the other party, whose personal liability could be fractionally very small, and the second tortfeasor can get no contribution from the husband!

By analogy to the Davis case and interpretation of the Uniform Contribution Among Tortfeasors Act in that light, defendant Yusem should have the right to the retention of Mr. Lawrence as an additional defendant so that the jury may determine whether Lawrence is solely liable, not liable or partially liable for the accident and damages: Fisher v. Diehl, supra. Yusem's release did not specifically release the husband from contribution nor from "the liability arising out of the accident," words stressed in the Killian case. The legislature should provide a definite phraseology for this situation just as they have in the situation where a plaintiff releases one or more tortfeasors: 12 PS §§2085 and 2086. One executing an insurance company release should have specific notice that the release also excludes right of contribution if it is so intended.

Nor is the above holding based entirely on the Uniform Contribution Among Tortfeasors Act. There was no contribution among joint tortfeasors at common law in the United States. This rule was based, somewhat erroneously (Dickinson Law Review, Vol. 62, p. 262), on the 1799 decision in Merryweather v. Nixan, 8 Term. Rep. 186, 101 Eng. Rep. 1337. Thus in most jurisdictions the Uniform Contribution Among Tortfeasors Act is strictly construed as it is in derogation of the common law.

However, Pennsylvania permitted contribution among negligent tortfeasors in the absence of statute. The first act, now repealed, which provided for contribution among joint tortfeasors, was passed by the Pennsylvania legislature in 1939. Our Supreme Court in 1928 permitted contribution among joint tortfeasors in the case of Goldman v. Mitchell-Fletcher Co., 292 Pa. 354, 141 Atl. 231. Our Superior Court in Fisher v. Diehl, supra, aptly stated that the 1939 statute was a confirmation of the Supreme Court's decision in the Goldman case.

In Jedwabny v. Philadelphia Transportation Co., 390 Pa. 231, where counsel for plaintiffs also appeared of record for one of the additional defendants who was also a plaintiff, the Supreme Court held this to be a conflict of interest and granted a new trial. Had the instant case gone to trial under these circumstances, we would make a similar decision. However, here the negligence of the husband plaintiff and the negligence of his insurance carrier were directly responsible for the failure to keep each other informed and to proceed as required by law, according to the verified pleadings of the husband as prepared and filed by his *present* counsel. If they allege their first counsel was contributorily negligent, they have a remedy at his expense, not at defendant's cost. Factually, are their interests adverse? Their tactics confound the ken and contradict the conscience of this court.

## Order

And now, April 12, 1958 in accordance with the foregoing opinion, the additional defendant having been guilty of laches in unexcusably failing to file his answer for many months and even up to the day set for trial before the jury, the rule to show cause why the additional defendant should not be given leave to file an answer is discharged. Exception granted.